UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| SAUL SALINAS, § | |
| § | |
| Petitioner, § | |
| VS. § | CIVIL ACTION NO. 2:18-CV-00294 |
| § | |
| LORIE DAVIS, § | |
| § | |
| Respondent. § | |

## MEMORANDUM AND RECOMMENDATION

Petitioner Saul Salinas is an inmate in the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ-CID") and is currently incarcerated at the McConnell Unit in Beeville, Texas. Proceeding *pro se*, Salinas filed an original habeas corpus petition pursuant to 28 U.S.C. § 2254 on August 31, 2018.[1] (D.E. 1). Liberally construed, Salinas claims that his due process and double jeopardy rights were violated during disciplinary proceedings held at the McConnell Unit. Respondent filed a motion for summary judgment on November 29, 2018, to which Salinas responded on December 27, 2018. (D.E. 8, 12). As discussed more fully below, it is respectfully recommended that Respondent's motion for summary judgment be granted and Salinas's habeas corpus petition be denied. It is further recommended that a Certificate of Appealability ("COA") be denied.

---

[1] Salinas stated under penalty of perjury that he placed his petition in the prison mail system on August 31, 2018, and it is considered filed as of that date. *See Spotville v. Cain*, 149 F.3d 374, 376 (5th Cir. 1998), and Rule 3, Rules Governing Section 2254 Cases.

## I. JURISDICTION

Jurisdiction and venue are proper in this court because the actions about which Salinas complains occurred in Beeville, Bee County, Texas, which is located in the Corpus Christi Division of the Southern District of Texas. 28 U.S.C. 2241(d); *Wadsworth v. Johnson*, 235 F.3d 959 (5th Cir. 2000).

## II. BACKGROUND

Salinas is serving a 60-year total sentence after being convicted of three counts of aggravated sexual assault of a child, in violation of Tex. Penal Code § 22.021. (D.E. 8-2 at 2-3). Salinas does not complain about his convictions, however, but instead challenges the results of a disciplinary hearing. (D.E. 1 at 6-7). In disciplinary case number 20170277427, Salinas was accused and found guilty of possessing a weapon, specifically, a round piece of metal that was sharpened at one end, on May 17, 2017. (D.E. 9-2 at 14). He lost 45 recreation and commissary days, 364 days of good time, and his line class[2] was reduced. (*Id.*). However, this disciplinary action and the accompanying punishments were subsequently deleted. (*Id.* at 15-18). In disciplinary case number 20180000468, which is the basis of Salinas's current § 2254 petition, he was accused and found guilty of the same offense. (*Id.* at 3).

---

[2] The amount of good conduct time an inmate can earn depends on his line class. When offenders enter TDCJ they are assigned a time-earning status of Line Class 1 and may be placed in a higher or lower time-earning status, depending on their behavior. The number of good conduct days that may be earned in a particular line class is fixed by statute. *TDCJ Offender Orientation Handbook*, rev. February 2017, at p. 8. http://www.tdcj.state.tx.us/documents/Offender_Orientation_Handbook_English.pdf (last viewed January 11, 2019).

In the offense report, the charging officer wrote that, during a search for contraband on May 17, 2017, he found a 5.25-inch piece of metal that was sharpened at one end on top of the window frame in Salinas's cell. (*Id.* at 4). At the disciplinary hearing, Salinas indicated that he never possessed a weapon and felt like his double jeopardy rights were being violated. (*Id.* at 8). The charging officer testified via telephone and reiterated what he wrote in the offense report. (*Id.*). In response to Salinas's questions, the officer responded that: (1) he never saw the weapon in Salinas's possession; (2) the metal could not have been broken fragments from the window frame; and (3) although he could not say for certain that Salinas placed the weapon in that location, Salinas was charged because it was in his assigned area. (*Id.* at 9). Salinas was found guilty based on the officer's testimony and a picture of the weapon. (*Id.* at 3, 5). He was punished with a loss of 364 days of good time, and his line class was reduced from S3 to L1. (*Id.* at 3).

Salinas filed a Step 1 grievance on September 14, 2017, in which he complained that: (1) the original disciplinary hearing was overturned due to an incomplete file; (2) the McConnell Unit, and particularly the charging officer, had a long history of corruption; and (3) he had already served 45 days on recreation, commissary, and phone restrictions, and 82 days on a reduced line class, before the first case was overturned. (D.E. 9-1 at 3-4). He requested that his original line class be reinstated and his good time credits be restored. (*Id.* at 4). The warden denied his grievance, noting that the disciplinary charges were appropriate, the guilty verdict was supported by a preponderance of the evidence, and all due process requirements were satisfied. (*Id.*). Salinas then filed a Step 2

3

grievance, arguing that the weapon was planted and the disciplinary action was retaliation for his filing of a previous grievance against a corrections officer. (*Id.* at 5-6). On November 22, 2017, Salinas was again denied administrative relief. (*Id.* at 6).

Liberally construed,[3] Salinas first argues in his § 2254 petition that his double jeopardy rights were violated when he was charged and found guilty of the same offense a second time after the first disciplinary action was overturned due to lack of evidence. (D.E. 1 at 6). Second, he argues that the disciplinary action was improper because there was no new evidence to support it, the purported picture of the weapon was fabricated, and the corrections officers sought to retaliate against him for prevailing on his appeal of the first disciplinary action. (*Id.*). Salinas seeks a reinstatement of his line class and an expungement of the disciplinary action from his record. (*Id.* at 7). Salinas also filed a document, which he titles an "affidavit," in which he reiterates that there was no evidence to support the disciplinary action and that the disciplinary proceedings were retaliation for his use of the grievance process. (D.E. 2 at 1-2).

Respondent moves for summary judgment. (D.E. 8). First, Respondent argues that, to the extent that Salinas challenges his loss of privileges and reduction in line class, he has failed to demonstrate an actionable habeas corpus deprivation because the Due Process Clause is not implicated. (*Id.* at 4-6). Further, Respondent argues that, even had Salinas lost good time as a result of his disciplinary offense, that would not invoke due process concerns because he is ineligible for release to mandatory supervision. (*Id.* at 7-

---

[3] *Pro se* filings are liberally construed. *See Black v. Davis*, 902 F.3d 541, 546 (5th Cir. 2018).

8). Finally, Respondent argues that, to the extent that Salinas raises a double jeopardy claim, the disciplinary proceedings were not a criminal prosecution and do not implicate double jeopardy. (*Id.* at 8). Salinas filed a response to the motion for summary judgment, reiterating his previous arguments. (D.E. 12 at 1-8).

### III. DISCUSSION

#### a. Due Process Claims

In order to be granted a writ of habeas corpus, a petitioner must show that he is in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a). In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court described the limited instances in which a prison inmate can make out a claim that a liberty interest has been taken without due process and acknowledged that, under certain circumstances, a state may create liberty interests that are protected by the Due Process Clause. *Id.* at 483-484 (citing *Wolff v. McDonnell*, 418 U.S. 539, 94 (1974) and *Meachum v. Fano*, 427 U.S. 215 (1976)). However, the interests generally are limited to those which impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484.

The Court further noted that the punishment of incarcerated prisoners effectuates prison management and prisoner rehabilitative goals and that, while prisoners do not shed all constitutional rights at the prison gate, "'lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'" *Id.* at 485 (quoting *Jones v. North Carolina Prisoner's Labor Union, Inc.*, 433 US. 119, 125 (1977), and *Price v. Johnston*,

5

334 U.S. 266, 285 (1948)). "Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." *Id.* The touchstone of the inquiry into the existence of a protected, state-created liberty interest is the nature of the condition in relation to the ordinary incidents of prison life. *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005) (citing *Sandin*, 515 U.S at 484).

"[S]peculative, collateral consequences do not create constitutionally protected liberty interests." *Luken v. Scott*, 71 F.3d 192 (5th Cir. 1995) (*citing Meachum v. Fano*, 427 U.S. 215, 229, n. 8 (1976)). "'Prisoners have no protectable property or liberty interest in custodial classifications.'" *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (citing *Whitley v. Hunt*, 158 F.3d 882, 889 (5th Cir. 1998)). *See also Malchi v. Thaler*, 211 F.3d 953, 959 (5th Cir. 2000) (holding that timing of inmate's release is too speculative to afford him a constitutionally cognizable claim to the right to a particular time-earning status, which right the Texas legislature has specifically denied creating).

In Texas, some inmates are entitled to early release under a mandatory supervision program in which a prisoner sentenced to the institutional division can serve the remainder of his term outside the prison, not on parole, but under the supervision and control of the pardons and paroles division. *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997) (citing Tex. Code Crim. P. art. 42.18 § 2(2)).[4] Prisoners earn good time credits that are added to their actual days served in prison to calculate their release date. Tex. Gov't Code § 508.147. The Fifth Circuit has determined that prisoners have a

---

[4] Currently located at Tex. Gov't Code § 508.001(5).

constitutional expectation of early release under the mandatory supervision program and therefore have a liberty interest with respect to their good time. *Malchi*, 211 F.3d at 957-958.[5] However, prisoners who commit certain offenses are excluded from eligibility for mandatory supervision. *See* Tex. Gov't Code § 508.149(a) (listing offenses that render an inmate ineligible for release to mandatory supervision). Aggravated sexual assault of a child, in violation of Tex. Penal Code § 22.021, is an excluded offense. *Id.* § 508.149(a)(8).

Here, Salinas cannot make out a due process cause of action based on either his reduction in line class or his loss of good time. First, as to his reduction in line class, a lower classification of line class limits an inmate's ability to earn good time credits, which could have an effect on his eligibility for parole and, in turn, on the amount of time he is in custody. However, Salinas has no protectable liberty interest in a particular custodial classification. *Harper*, 174 F.3d at 719. Specifically in the case of a line class designation, the Fifth Circuit has held that the timing of an inmate's release is too speculative to afford him a constitutionally cognizable claim to the right to a particular time-earning status. *Malchi*, 211 F.3d at 959. Thus, Salinas cannot make out a due process claim based on his reduction in line class.

Second, as to his loss of good time, Salinas's convictions for aggravated sexual assault of a child preclude his release to mandatory supervision. Tex. Gov't Code

---

[5] The Fifth Circuit's holding applied to a previous version of the Texas mandatory supervision program, which has since been amended. *See Malchi*, 211 F.3d at 958. The Fifth Circuit has concluded that prisoners have a protected liberty interest under the amended version as well. *Teague v. Quarterman*, 482 F.3d 769, 776 (5th Cir. 2007).

§ 508.149(a)(8). Because Salinas is not eligible for release to mandatory supervision, he does not have a liberty interest in earning or keeping good time credits, and thus has failed to make out a claim that his due process rights have been violated. *See Malchi*, 211 F.3d at 957-958 (discussing when prisoners have a liberty interest with respect to their good time).

### b. Double Jeopardy Claim

Application of the Double Jeopardy Clause is limited to proceedings that are "essentially criminal." *Breed v. Jones*, 421 U.S. 519, 528 (1975). "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 556. Revocation of good time credits is not comparable to a criminal conviction. *Hudson v. Johnson*, 242 F.3d 534, 537 (5th Cir. 2001).

Here, Salinas cannot make out a double jeopardy cause of action based on either his reduction in line class or his loss of good time. Although the disciplinary proceeding that Salinas complains about charged him with the same conduct as the earlier disciplinary proceeding, prison disciplinary proceedings are not part of a criminal prosecution and the loss of good time credits is not comparable to a criminal conviction. *Wolff*, 418 U.S. at 556; *Hudson*, 242 F.3d at 537. Thus, Salinas cannot rely on the Double Jeopardy Clause because it applies only to proceedings that are "essentially criminal." *Breed*, 421 U.S. at 528.

### IV. CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Salinas has not yet filed a notice of appeal, the issue of whether he is entitled to a COA will be addressed. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (a district court may *sua sponte* rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

Where a district court rejects the constitutional claims on the merits, the petitioner must show that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327. Here, because reasonable jurists would not find it debatable

that Salinas failed to state a claim for a violation of a constitutional right, it is recommended that a COA be denied.

## V. RECOMMENDATION

Based on the foregoing, it is respectfully recommended that Respondent's motion for summary judgment (D.E. 8) be GRANTED. Salinas's cause of action for habeas corpus relief should be DENIED. In addition, it is further recommended that any request for a Certificate of Appealability be DENIED

Respectfully submitted this 11th day of January, 2019.

                                                  B. JANICE ELLINGTON
                                                  UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc).